### Ex Parte Charles Mussett.

No. 2931. Decided December 10, 1913.

Rehearing denied January 14, 1914.

1.—Contempt—Injunction—Civil Case—Jurisdiction—Supreme Court.

Under the Constitution of Texas as amended in 1891 and the law as it now stands, the Supreme Court of Texas is granted specific authority to issue writs of habeas corpus in all civil cases where any person is restrained of his liberty by virtue of any order, process, or commitment issued by any court or judge in a civil cause, and where relator was fined for contempt for violating an injunction of the District Court restraining him from exhibiting moving pictures on Sunday for pay, this court will not entertain jurisdiction of his application for writ of habeas corpus asking release under the commitment of said District Court. Qualifying Ex parte Allison, 48 Texas Crim. Rep., 634. Davidson, Judge, dissenting.

2.—Same—Rule Stated—Supreme Court—Court of Criminal Appeals.

Our whole judicial system is built upon the principle that the Supreme Court of Texas should have final and absolute jurisdiction in all civil cases, and the Court of Criminal Appeals final and absolute jurisdiction in all criminal cases, and in a case of this character it is the policy of the law of this State that the relator should seek his remedy in the Supreme Court of Texas.

From Tarrant County.

Original application for writ of habeas corpus, asking a release from commitment for contempt for violating an injunction issued from the District Court restraining relator from exhibiting moving pictures on Sunday for pay.

The opinion states the case.

*John W. Wray*, for relator.

*C. E. Lane*, Assistant Attorney-General, for the State.

HARPER, Judge.—This is an original application for habeas corpus and is a companion case to that of Ex parte Andrew Zuccaro, this day decided. In that case the facts are so fully stated we do not deem it necessary to detail them here. It will be sufficient to state that on January 27, 1912, the county attorney brought suit to enjoin certain theaters and moving picture shows from opening and showing on Sunday; that

the district judge to whom same was presented, Hon. W. T. Simmons, Judge of the Sixty-seventh District, deemed the allegations in the petition sufficient and entered the following order: "Petition granted and clerk of the District Court of Tarrant County is directed to issue and direct to each and every defendant named in this petition an order enjoining, restraining and prohibiting them and each of them from opening or permitting to be open their theaters and moving picture shows, respectively, on Sunday for public amusement, from giving therein any performances for public amusement, and from charging a fee for admission thereto or from doing any of said acts until the further order of this court. This cause is set down for hearing Saturday, February 3, 1912, at 2 o'clock p. m., and clerk directed to issue notice thereof to defendants and each of them."

The record shows this notice was issued and served; that the defendants in that suit never appeared at said time, nor have they ever filed a motion to dissolve the temporary injunction, nor any answer in the case, and no further steps have ever been taken in the case until upon information filed this relator and Mr. Zuccaro were cited to appear and show cause why they should not be held in contempt of court for violating this injunction.

Relator's able counsel admit the shows were opened on Sunday, but say that the District Court of Tarrant County was without authority or jurisdiction to order the injunction to issue, and the order was therefore a nullity; that if mistaken in this, that temporary injunction was not a continuing order, and when hearing was set on February 3, and no hearing had, it was vacated and no longer in force.

On these two issues, and these two alone, relator's counsel contended they were entitled to have us issue the writ of habeas corpus and discharge them on final hearing. The State was also ably represented on the hearing, and contended that the District Court did have the authority, power and jurisdiction to issue the writ and its order was not void; that the temporary injunction issued was a continuing one and remains in force until vacated by order of the court granting it.

Without entering into a discussion of the merits of these two propositions, we are met at the threshold with the grave proposition, even if relator is entitled to relief, to which court should the application for a writ of habeas corpus be presented—to this court or the Supreme Court? They are both courts of final jurisdiction, in matters in which they have any jurisdiction, and from the action of either no appeal will lie. If we assume jurisdiction, and order the writ to issue, it should be a finality whatever order we might make, and if the Supreme Court should entertain jurisdiction and order the writ to issue, likewise its orders should be a final disposition of the matter. In the case of Ex parte Allison, 48 Texas Crim. Rep., 634, this court entertained jurisdiction in ·this character of case, and held that the District Court, under a statute specifically authorizing it, had authority to enjoin persons from operating gaming houses. This opinion was rendered November 15, 1905. Mr.

Allison not being satisfied with the decision of this court when rendered, sued out a second writ, which was granted by the Supreme Court, and their opinion was handed down February 1, 1906 (Ex parte Allison, 99 Texas, 455). It is thus seen that both this court and the Supreme Court have entertained jurisdiction and issued the writ of habeas corpus in this character of case, and in that case the Supreme Court and this court both issued a writ in the same case and passed on the same facts, and both upheld the law. Had they not arrived at the same conclusion, there would have occurred one of those conflicts that in the past have marred the jurisprudence of our State. This condition should be avoided, whenever it is in the power of the courts to do so, and either this court's order or the order the Supreme Court should be a finality.

Our whole judicial system is built upon the principle that the Supreme Court should have final and absolute jurisdiction in all civil cases, and this court should have final and absolute jurisdiction in all criminal cases, and if this true dividing line be at all times kept in mind, we do not think that a conflict in jurisdiction nor in the opinions of the courts can or should arise again. Without passing on the question whether or not we have the authority under the Constitution to issue the writ, we go to the question, is it the policy of the law of this State that we do issue it? To decline to do so deprives relator of no right, for he can at once apply to the Supreme Court for a writ. There are many reasons that arise in our mind why the application should be made to the Supreme Court and not to this court. If we entertain jurisdiction, and we held that the district judge had no jurisdiction, we could only discharge this relator and could make no other order. Should the Supreme Court grant the writ and entertain that view, it could not only discharge this relator, but by mandamus compel the vacating of the temporary injunction and thus finally determine the question, releasing some ten or a dozen defendants, and save each from suing out writs of habeas corpus. We could not do so, and if, on the other hand, we held that the court had authority to issue the writ of injunction, and should remand the relator, he could at once move to dissolve the injunction, and if the court refused to do so, he could at once appeal, and this appeal could never under any circumstances come to this court, but would go to the Supreme Court for final adjudication, and its decision should and would be final in the premises, and binding on all courts of this State, while our opinion in the premises as is thus shown would not be final. We have no civil jurisdiction.

By the Constitution of 1876 the Supreme Court was not granted authority to issue the writ of habeas corpus. By the terms of that Constitution this court alone was granted authority to issue this writ. (Secs. 3 and 6 of article 5, of Const. 1876.) In 1891 the Constitution was amended and in section 3 of article 5 the Supreme Court was granted specific authority to "issue writs of habeas corpus as may be prescribed by law," and the civil jurisdiction this court had entertained theretofore under the Constitution of 1876 was taken from it. (See section

6 of article 5 of Const. of 1876, and section 5 of article 5 of Const., as amended 1891.) From that date to this it was not contemplated that this court should entertain jurisdiction in any civil matter, and in their granting the Supreme Court the power to issue the writ of habeas corpus, in our opinion, it was contemplated and intended that when an application for a habeas corpus grew out of a civil suit that the Supreme Court should entertain jurisdiction of the matter. And as evidence that this was what the Constitution intended, the Legislature later adopted article 1529 of the Revised Civil Statutes, wherein it was specifically provided that the Supreme Court shall have the power to issue writs of habeas corpus in all cases where any person is restrained of his liberty by virtue of any order, process, or commitment issued by any court or judge on account of any order, judgment or decree theretofore made, rendered or entered in any civil cause. This in specific terms giving the Supreme Court jurisdiction in cases of this character.

That a suit brought to enjoin one from doing any act or thing, we think will be conceded by all to be a civil case. An appeal lies to the civil appellate branch and not to this court. That the suit instituted in the District Court of Tarrant County for a writ of injunction was a civil case will we do not think be questioned; that the order made by Judge Simmons was in this civil suit is certain, and it is equally certain that relator is restrained of his liberty by virtue of an alleged violation of this order, and an order made in that case. To our mind, taking into consideration our Constitution, and the amendment thereto, the Act of the Legislature, in pursuance of this amendment to the Constitution, quoted above, it was the clear intent and purpose that in this character of case the application for a writ of habeas corpus should be addressed to the Supreme Court, and not to this court. Its action will be final, and will finally determine the question of whether or not the civil courts have jurisdiction to entertain suits and enjoin in cases of this character where specific authority to do so has not been conferred on them by the Legislature. Any expression we might give upon that question would not bind the Supreme Court, while it would be the duty of all courts to abide the opinion of the Supreme Court in the premises, and it would be our pleasure to respect it as the opinion of the court having final jurisdiction in the matter.

·We have held that the opening of shows of the character mentioned in plaintiff's petition was a violation of the Sunday law, and we adhere to that opinion, and we are sure that the Supreme Court will and does appreciate the fact that our decision should be final in that matter. But whether or not they can be enjoined from opening on the Sabbath involves a construction of the jurisdiction of District Courts in civil matters, and thus under the law, they are made the final arbiters, and we and all others should and will bow to their opinion.

Being of this opinion, the application to this court for a writ of habeas corpus is denied, but in so ordering it is done without prejudice to the right of relator to apply to the Supreme Court for a writ. This

much is said on account of the opinion of the majority of the court in Ex parte Allison, supra (99 Texas, 455), wherein it was stated if this court had granted and acted on the writ, the relator might not be entitled to a second writ, that court thereby recognizing the concurrent jurisdiction in the premises, but we think as a matter of policy both courts should not exercise it in this character of cases, and only in extreme cases would we feel called upon to issue the writ in any case where by law the matter should properly go to the Supreme Court for final review in the ordinary course of court procedure.

The application is refused.

*Writ denied.*

DAVIDSON, JUDGE (dissenting).—The Constitution authorizes and empowers this court to grant writs of habeas corpus. This duty this court can not legally evade. That the Supreme Court may in certain cases also grant such writs does not in any way withdraw our jurisdiction. The Supreme Court, in my opinion, has power to grant the writ in this case, but we have heard the application, and ought not to dismiss the application.

[Rehearing denied January 14, 1914.—Reporter.]